STROUD, Judge.
 

 *172
 
 The trial court properly exercised subject matter jurisdiction under the UCCJEA and its findings of fact support the conclusion of a substantial change of circumstances affecting the welfare of the children so modification of the prior custody order was appropriate. We therefore affirm.
 

 *173
 
 I. Background
 

 On 5 April 2011, plaintiff-mother and defendant-father entered into a "CONSENT JUDGMENT FOR CUSTODY AND PARENTING TIME" in Michigan agreeing to joint legal custody of their two children with the "children's legal residence" being with their mother and their home state designated as Michigan. On 29 October 2013, another consent order was entered in Michigan allowing plaintiff and the children to move to North Carolina. The court in Michigan noted it "will retain continuing exclusive jurisdiction over this action" and "neither party will file to move or change jurisdiction from the Wayne County Circuit Court for all issues of custody and parenting time for at least five (5) years from the date of entry of this Order." On 1 December 2014, the parties signed one final consent order in Michigan primarily regarding parenting time and the court determined the order "resolves all claims between the parties, and closes the case."
 

 Also on 1 December 2014, plaintiff filed a "PETITION FOR REGISTRATION OF FOREIGN CHILD CUSTODY ORDER" in North Carolina to register the Michigan orders;
 

 *599
 
 defendant's address was noted as South Dakota. On or about 3 February 2015, defendant filed an objection to the petition "on the basis that there is an active case in Michigan[.]" On 2 March 2015, the trial court "registered and confirmed" all three of the Michigan orders.
 

 On 4 March 2015, plaintiff then filed a "MOTION TO DETERMINE THE RESIDENCES OF THE PARTIES FOR PURPOSES OF JURISDICTION" and thereafter a motion to enforce the registered Michigan orders. On 5 June 2015, defendant responded to Plaintiff's motion to enforce with a motion to dismiss because North Carolina did not have personal jurisdiction over him. On 19 June 2015, plaintiff responded to defendant's motion to dismiss requesting it be denied due to waiver because of defendant's February 2015 written objection filed with the court and defendant's attorney's six court appearances on his behalf. Defendant had not raised a defense of a lack of personal jurisdiction in his objection or at the court appearances. On 26 June 2015, the court ultimately denied defendant's motion to dismiss based on lack of personal jurisdiction but concluded as a matter of law it did not have subject matter jurisdiction and dismissed Plaintiff's Motion to Enforce the registered judgment because the motion did not present "an issue ripe for the Court to intervene[.]"
 

 On 21 July 2015, defendant moved for modification of custody, requesting that the children be primarily placed with him in South Dakota, and for contempt because plaintiff had not allowed him his full summer
 
 *174
 
 visitation. On 24 November 2015, the court entered an interim child custody order concluding that North Carolina was the home state; there had been "a substantial change in circumstances affecting the welfare of the minor children" so it was appropriate to modify the last Michigan order; and it was in the best interest of the children for the parties to share legal custody with plaintiff having primary physical custody. On 8 February 2016, the court entered a custody order determining that North Carolina was the home state; there had been "a substantial change in circumstances affecting the welfare of the minor children" so it was appropriate to modify the last Michigan order; and it was in the best interest of the children for the parties to share legal custody with plaintiff having primary physical custody. Defendant appeals both the 24 November 2015 interim order and the 8 February 2016 custody order.
 

 II. Subject Matter Jurisdiction
 

 Defendant first makes two arguments on appeal contending that North Carolina did not have subject matter jurisdiction to enter two custody orders. Oddly, it was defendant who filed for modification of custody in North Carolina; nonetheless, a party cannot confer subject matter jurisdiction on a court merely by requesting relief in it.
 
 See
 

 In re T.R.P
 
 .,
 
 360 N.C. 588
 
 , 595,
 
 636 S.E.2d 787
 
 , 793 (2006) ("Subject matter jurisdiction cannot be conferred upon a court by consent, waiver or estoppel, and therefore failure to object to the jurisdiction is immaterial. Because litigants cannot consent to jurisdiction not authorized by law, they may challenge jurisdiction over the subject matter at any stage of the proceedings, even after judgment." (citations, quotation marks, brackets, and ellipses omitted)).
 

 Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal. Subject-matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. Subject-matter jurisdiction derives from the law that organizes a court and cannot be conferred on a court by action of the parties or assumed by a court except as provided by that law.
 

 McKoy v. McKoy
 
 ,
 
 202 N.C. App. 509
 
 , 511,
 
 689 S.E.2d 590
 
 , 592 (2010) (citations and quotation marks omitted).
 

 A. 26 June 2015 Order
 

 Defendant first contends that because the trial court dismissed Plaintiff's motion to enforce in its 26 June 2015 order due to the court
 
 *175
 
 lacking subject matter jurisdiction, the court could not later exercise subject matter jurisdiction. Defendant's argument is entirely misplaced because the 26 June 2015 order did not determine that the court lacked subject matter jurisdiction over the entire case but rather that the court lacked subject matter
 
 *600
 
 jurisdiction over
 
 only
 
 the matters in the motion because the particular matter was not ripe.
 
 See generally
 
 Black's Law Dictionary 10
 
 th
 
 ed. (2014) (defining ripeness as "1. The state of a dispute that has reached, but has not passed, the point when the facts have developed sufficiently to permit an intelligent and useful decision to be made. 2. The requirement that this state must exist before a court will decide a controversy"). That the court chose the term ripe actually indicates that it believed it would in the future have subject matter jurisdiction over the issue in the motion, enforcing the Michigan orders. Regardless, the trial court's initial denial of enforcement of the Michigan orders did not speak to the trial court's broader subject matter jurisdiction over the entire case, so this argument fails.
 

 B. Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")
 

 Defendant next contends that under the UCCJEA "a court of this State may not modify a child-custody determination made by a court of another state unless a court of this State has jurisdiction to make an initial determination under G.S. 50A-201(a)(1) or G.S. 50A-201(a)(2) [.]" Defendant then notes that North Carolina General Statute § 50A-201 provides that a court can only exercise jurisdiction depending on the determination of the "home state" of the children.
 
 See
 
 N.C. Gen. Stat. § 50A-201 (2015). For North Carolina to be the home state, the children would have needed to live here with their mother "for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C. Gen. Stat. § 50A-102 (2015). "Commencement means the filing of the first pleading in a proceeding."
 

 Id.
 

 (quotation marks omitted). Defendant contends that the first pleading was filed on 1 December 2014 when plaintiff filed her motion to register the child custody orders from Michigan and because at that time the children had only resided in North Carolina since 12 August 2014, for approximately three months, they had not resided here long enough for North Carolina to be the home state and ultimately exercise jurisdiction.
 

 But defendant's view of when the proceeding commenced is in error. North Carolina General Statute § 50A-102(4) defines "child custody proceeding" as
 

 a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue
 
 . The term
 
 *176
 
 includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence in which the issue may appear.
 
 The term does not include
 
 a proceeding involving juvenile delinquency, contractual emancipation, or
 
 enforcement
 
 under Part 3 of this Article.
 

 Id.
 

 (emphasis added). Plaintiff's motion to register the Michigan orders did not raise the issues of "legal custody, physical custody, or visitation[.]"
 

 Id.
 

 Her request was simply to register the Michigan orders in North Carolina so they could be enforced, in accordance with North Carolina General Statute § 50A-305.
 
 See
 
 id.
 

 North Carolina General Statute § 50A-102(4) specifically excludes a proceeding for enforcement under Part 3 of Article 2; North Carolina General Statute § 50A-305 is found in Part 3 of Article 2.
 
 See generally
 
 Chap. 50A
 
 et. seq.
 
 The first pleading regarding custody and visitation issues was filed by father on 21 July 2015, approximately 11 months after even defendant's alleged date the children began residing in this state. Because North Carolina followed the mandates of the UCCJEA it properly exercised subject matter jurisdiction, and this argument is overruled.
 
 [1]
 

 *601
 
 III. Substantial Change of Circumstances
 

 Lastly, defendant contends that the trial court erred in determining there had been a substantial change of circumstances so it was appropriate to modify custody. Again, we note defendant himself filed for the modification of custody which alleged facts he deemed to be substantial changes justifying modification of custody. Defendant's motion acknowledged the prior Michigan order which had anticipated Plaintiff's move to North Carolina and had even addressed where the children would attend school when they reached kindergarten age. In fact, the Michigan order entered in October 2013 set out a specific parenting schedule after the children reached school age, to be based upon the public school schedule in the county where the children resided at that time; it also addressed travel for visitation, including the option of air travel when the children are older.
 

 *177
 
 Defendant's motion for modification was based upon several allegations of changes in circumstances, all negative for plaintiff, and positive for himself. Specifically, defendant alleged that plaintiff had violated various provisions of the Michigan custody orders and interfered with his parenting time and communication with the children; that plaintiff's behavior was "more erratic and unstable" such that she was unable to care for the children on her own; that plaintiff's living situation was "unsettled" including because she once told him she was considering moving to Wilmington but then decided to stay in Asheville; that plaintiff had no family support in Asheville since her mother lives in Michigan; and that plaintiff is more concerned with her career than with the children and has them spend too much time in the care of a babysitter. Defendant also alleged other "changes" which are actually circumstances that clearly existed, according to his own allegations, prior to the entry of the Michigan orders, such as that plaintiff has "a violent, flash temper and mood swings which has been documented by her assault on defendant when she was pregnant[.]" Defendant further alleged that the parties had been unable to agree on where the children should attend kindergarten, despite the prior Michigan consent orders, which provided that they would attend school in North Carolina; defendant stated he could no longer agree to the provisions of the Michigan orders due to the negative changes he alleged regarding plaintiff and her living situation.
 

 We note that defendant does not challenge the ultimate custody provisions determining that plaintiff would have primary physical custody but
 
 only
 
 contends there was not a substantial change in circumstances justifying the modification.
 

 Shipman v. Shipman
 
 explains,
 

 It is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a substantial change of circumstances affecting the welfare of the child warrants a change in custody. The party seeking to modify a custody order need not allege that the change in circumstances had an adverse effect on the child. While allegations concerning adversity are acceptable factors for the trial court to consider and will support modification, a showing of a change in circumstances that is, or is likely to be, beneficial to the child may also warrant a change in custody.
 

 *178
 
 ....
 

 The trial court's examination of whether to modify an existing child custody order is twofold. The trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child. If the trial court concludes either that a substantial change has not occurred or that a substantial change did occur but that it did not affect the minor child's welfare, the court's examination ends, and no modification can be ordered. ...
 

 When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
 

 *602
 
 Our trial courts are vested with broad discretion in child custody matters. This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges[.] Accordingly, should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary.
 

 In addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law. With regard to the trial court's conclusions of law, our case law indicates that the trial court must determine whether there has been a substantial change in circumstances and whether that change affected the minor child. Upon concluding that such a change affects the child's welfare, the trial court must then decide whether a modification of custody was in the child's best interests. If we determine that the trial court has properly concluded that the facts show that a substantial change of circumstances has affected the welfare of
 
 *179
 
 the minor child and that modification was in the child's best interests, we will defer to the trial court's judgment and not disturb its decision to modify an existing custody agreement.
 

 357 N.C. 471
 
 , 473-75,
 
 586 S.E.2d 250
 
 , 253-54 (2003) (citations and quotation marks omitted).
 

 We need not delve far into the findings of fact to conclude there was a substantial change of circumstances affecting the children's welfare. In a well-organized, detailed, and comprehensive order, the trial court addressed defendant's allegations regarding Plaintiff's instability and inability to care for the children, and ultimately rejected them. The order also addressed the alleged changes, both positive and negative, for both parties since entry of the last Michigan order. We will not address all of the findings of fact, but we will address one of the most important issues which led to the motions filed by both parties: the dispute over where the children would attend kindergarten. The trial court made the following findings which are not challenged on appeal:
 

 31. The previous Order of the Michigan Court mandated that the minor children would begin kindergarten in the State of North Carolina.
 

 32. The minor children were scheduled to begin kindergarten in August of 2015 at William W. Estes Elementary School.
 

 33. The Defendant enrolled the minor children in kindergarten in the State of South Dakota and the Plaintiff enrolled the minor children in kindergarten in the State of North Carolina.
 

 34. The Plaintiff did not consent to the Defendant enrolling the minor children in kindergarten in the State of South Dakota, nor was she notified by the Defendant.
 

 ....
 

 36. The parties have shared visitation with the minor children in accordance with the three (3) prior Court Orders from the State of Michigan. However, both parties have had difficulty interpreting the visitation schedules as set forth in the former Orders of the Michigan Court.
 

 *180
 
 37. The parties were in conflict regarding the interpretation of the visitation schedule for the month of August 2015. Plaintiff interpreted the previous Order to require the Defendant to return the children to the State of North Carolina to begin kindergarten on the Saturday two weeks-prior to the day the minor children were to begin kindergarten. That day was August 8, 2015.
 

 38. The Defendant claims that he interpreted the previous Order to allow him the entire month of August 2015 as his visitation time with the children.
 

 39. The Defendant did not return the children on August 8, 2015, rather, returned the minor children to the State of North Carolina on or about August 14, 2015.
 

 *603
 
 Defendant does challenge finding of fact 35 which finds that duel enrolling the children in school "is a substantial change of circumstances affecting the minor children." Defendant argues "[t]here is an absence of any evidence on how the father's enrollment of the children in school where he resided ... impacted the children in any way." Defendant seems to forget that the Michigan court order had already decreed that the children were to be enrolled in North Carolina, and that his own motion to modify was prompted by the kindergarten enrollment and alleges various violations of the same order by plaintiff as negative changes which impacted the children. It is clear from the next sentence in finding of fact 35 how the children were negatively impacted by the duel enrollments as the trial court found "[i]t is no longer appropriate for these two parents to share the education decision of where the children shall be enrolled." In other words, defendant's disregard for the prior Michigan order and trying to unilaterally move the children to South Dakota and his inability to work with plaintiff to resolve their school disagreement without extensive litigation indicated to the trial court that the parties cannot, for whatever reason, work together for the benefit of the children. The negative impact on the children is not from whether they attend this school or that school; the impact is from their parents' fighting with one another over important decisions all parents must make for their children. Parental conflict is not good for children. The trial court is not required to wait until the children have been damaged enough to receive a formal diagnosis of some mental or emotional disorder to intervene.
 

 The trial court also addressed defendant's allegations of various violations of the orders by plaintiff and essentially rejected them. Although
 
 *181
 
 the 2013 Michigan order had set out a parenting schedule in anticipation of the children starting school, the conflict that developed between the parents since 2013, exacerbated by defendant's unilateral enrollment of the children in school in South Dakota, supported the trial court's finding of a substantial change of circumstances requiring a modification of the custodial schedule in the hope of avoiding further parental conflict. As the actual specifics of the changes in the custodial schedule are not at issue on appeal, we need not review them. This argument is overruled.
 

 IV. Conclusion
 

 We conclude that North Carolina properly exercised subject matter jurisdiction and the trial court properly found a substantial change in circumstances affecting the minor children so modification of the prior custody order was in the best interest of the children; therefore, we affirm.
 

 AFFIRMED.
 

 Judges DILLON and MURPHY concur.
 

 [1]
 

 We note there is some issue on appeal regarding whether we may consider the addendum to the record which includes an order from the court in Michigan determining Michigan no longer has subject matter jurisdiction and an email from the district court judge presiding over this case in North Carolina, noting that she, the judge in Michigan, and a judge in South Dakota had all spoken and determined North Carolina was the appropriate state to exercise jurisdiction. We need not resolve whether the addendum should be considered by this Court as we have already determined North Carolina is the appropriate jurisdiction for this case; however, we wanted to note that no arguments have been made that any other state would have jurisdiction over this case.