IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-656

No. COA20-911

Filed 7 December 2021

Cumberland County, No. 17CVD9178

KELLY MALONE-PASS, Plaintiff,

v.

DAVID SCHULTZ, Defendant.

Appeal by plaintiff from order entered on or about 4 November 2019 by Judge Edward A. Pone in District Court, Cumberland County. Heard in the Court of Appeals 25 May 2021.

*Culbertson & Associations, by K.E. Krispen Culbertson, for plaintiff-appellant. No brief filed by defendant-appellee.*

STROUD, Chief Judge.

¶ 1 Kelly Malone-Pass ("Mother") appeals from an amended order granting David Schultz ("Father") sole legal and physical custody of their two minor children and denying Mother visitation with the children. Mother first argues the trial court lacked subject matter jurisdiction or should have declined to exercise it under North Carolina General Statute § 50A-208(a). N.C. Gen. Stat. § 50A-208(a) (2019). Mother then challenges Findings of Fact and Conclusions of Law that she acted inconsistently with her constitutionally protected status as a parent, that Father was

a fit and proper person to have sole legal and physical custody, that granted Father

sole legal and physical custody, and that determined it was not in the children's best

interest to have visitation with Mother. After *de novo* review, we hold the trial court

had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act

("UCCJEA") and that North Carolina General Statute § 50A-208(a)'s jurisdictional

bar does not apply here. In addition, we hold that the trial court's Findings of Fact

support its ultimate Findings and Conclusions of Law that it was in the children's

best interest for Father to have sole legal and physical custody and for Mother to have

no visitation, and the trial court did not abuse its discretion by entering this order.

Therefore, we affirm.

## I. Background

The uncontested Findings of Fact in this case show the proceedings in North

Carolina started when Mother filed a petition to register a foreign child custody order

from New York in late 2017.[1] The New York custody order granted Mother and

Father joint custody, with the children, D.S. and A.S.,[2] living primarily with Father,

and set out visitation schedules. The New York order also required the parties to

---

[1] The record in this case was filed by Mother as the "Proposed Record on Appeal." Father did not file any "notices of approval or objections, amendments, or proposed alternative records on appeal," so Mother's "proposed record on appeal thereupon constitutes the record on appeal." N.C. R. App. P. Rule 11(b).

[2] We use the children's initials to shield their identity.

register the order in North Carolina within seven days and stated that "New York State is relinquishing jurisdiction." The North Carolina trial court "asserted and assumed jurisdiction from New York over the minor children and the parties," finding at the time "both parties and the children resided in North Carolina."

¶ 3 Later, "both parties filed subsequent motions and countermotions for North Carolina to assert jurisdiction, civil contempt, and motions to modify child custody due to a substantial change in circumstances affecting the welfare of the minor children." Mother's motion alleged she was a resident of both New York and of North Carolina. Over the course of 2018 and into early 2019, the trial court entered a number of orders that granted Father temporary custody of the children and set various visitation schedules for Mother. Mother failed to appear at one of these hearings. Also during 2018, both parents moved, Father to Summerville, South Carolina and Mother to Massachusetts.

¶ 4 In March 2019, Mother, claiming residence in Massachusetts, filed a domestic violence action against Father in Massachusetts and obtained a domestic violence protective order from the Massachusetts court; this order also granted her emergency temporary custody of the children. Pursuant to the Massachusetts order, Mother traveled to South Carolina, took custody of the children, and brought them to Massachusetts with her. In response, Father filed before the North Carolina trial court an emergency motion to suspend Mother's visitation, alleging that Mother had

made fraudulent claims before the Massachusetts court. The Massachusetts court then dismissed the action and dissolved its orders nunc pro tunc. The same day as the Massachusetts court's action, the North Carolina trial court held a hearing on the issue. The North Carolina court ordered the children be returned to Father's custody in compliance with its previous orders and notwithstanding the Massachusetts action because North Carolina was the only state with subject matter jurisdiction regarding child custody.

¶ 5        Following the Massachusetts incident, the trial court held multiple hearings over the course of April 2019, culminating in the May 2019 order and amended order. On 3 April 2019, the trial court held an in-chambers discussion with the children about the Massachusetts incident and found the children:

> are very upset with . . . Mother for taking them from South Carolina. The anger had not subsided; however, during the course of the conversation, the court determined that they still loved their [M]other. The minor children did not want to visit with their [M]other, however, they understood the court was likely to order visitation. It was clear that they wanted the visits to be in South Carolina if there was going to be visitation. They did not want to travel to Massachusetts. The minor children gave no indication that . . . Father had influenced them in any way or talked negatively about . . . [M]other.

The court also barred Mother and Father from asking the children about the in-chambers conversation between the court and the children. Following the hearing, the court allowed Mother to take the children to lunch. At the lunch, among other

events, Mother asked the children about the in-chambers conversation they had with the court, thereby violating the court's order. The trial court made an unchallenged Finding of Fact that the lunch "added further toxicity to the relationship" between the children and Mother. Following that lunch, Father filed a motion to suspend Mother's visitation, and the court held a hearing on that motion on 11 April 2019. The April hearings culminated in an amended order on 9 May 2019 granting temporary joint custody to Mother and Father with Father having temporary legal and physical custody of the children. The trial court set a visitation schedule for Mother, but it also stated: "***The minor children will not be forced to visit with [Mother] if they choose not [to] do so and they must inform . . . [Mother] of their desire not to visit with [Mother].***" (Bold and italics in original.)

¶ 6     The court held a final hearing on the motions for modification of the New York custody order on 14–16 August 2019. The day before the hearing, Mother filed a motion to dismiss alleging the court lacked subject matter jurisdiction, and she then renewed that motion in court at the beginning of the hearing. Mother argued that New York had subject matter jurisdiction, not North Carolina, that Father had committed fraud by telling the New York court he would live permanently in North Carolina with the children, and that the New York court would be the best place to address the fraud issue. In Findings of Fact and a Conclusion of Law which Mother challenges on appeal, the trial court found North Carolina had subject matter

jurisdiction to modify the New York custody order and therefore denied Mother's motion to dismiss. The trial court's ruling was based on unchallenged Findings of Fact that Father and the children moved to North Carolina in March 2017 and lived there continuously for more than six months before the action was filed, that Mother previously acknowledged and averred to those facts, and that the New York order specifically stated the parties were required to register the order in North Carolina within seven days and that New York was relinquishing jurisdiction.

¶ 7        Following the hearing in mid-August 2019, the trial court appointed a Guardian Ad Litem ("GAL") so that the children's "voices could be heard." The GAL spoke with both parties and the children and prepared a report for the court. The court held a hearing about the GAL's report in September 2019 where it received her report into evidence, heard testimony about it, and allowed the parties the opportunity to question the GAL. Mother was not present at the hearing without explanation, and Father had his attorney present although the attorney did not ask the GAL any questions.

¶ 8        The August and September 2019 hearings led to the trial court's order now on appeal, the "Order on Motions to Modify Custody/Contempt," in November 2019. (Capitalization altered.) The order granted Father sole legal and physical custody of the children, denied Mother visitation because it was not in the best interest and welfare of the children, and dismissed the contempt issues as moot. To support those

orders, the trial court made numerous unchallenged Findings of Fact. Beyond the issues discussed above, the trial court made the following unchallenged Findings of Fact by "clear, cogent and convincing evidence." (Underline in original.)

¶ 9     First, the trial court made Findings about the children's living arrangements with Father. The children lived with Father from the start of the case, and Father and the children moved to North Carolina with the previous family therapist's approval. The trial court further found the children were doing well with Father. The court noted that prior to the Massachusetts incident, "The children were not in any danger. They were very happy in the home of . . . [F]ather. They were doing well in school." The children also continued to do well in their Father's care following the time their Mother took them to Massachusetts, with the court finding at the time of the order:

> 174. The minor children are doing well in their [F]ather's care. They are both doing well in school and are happy in the home of their [F]ather and step-mother.
> 175. [A.S.] developed encopresis which had been treated following the removal and placement in foster care in Colorado.[3] It recurred and he had a few incidents after . . . . [M]other removed him from South Carolina with the Massachusetts order which was subsequently dismissed. It is stress related and he is having less stress since the visitation [with Mother] had stopped.
> 176. They are doing much better now in therapy. They

---

[3] Prior to living in New York, Mother and the children had resided in Colorado, where there was an investigation by child protective services that resulted in the children being removed from Mother's care and being placed in foster care.

enjoy the sessions as it is now totally focused on them. They enjoy school and they have good grades.
177. They attend [redacted] High School. [D.S.] is playing football and running track. His grades last year were all A's except a B in Spanish.

¶ 10    The trial court also considered and ultimately rejected Mother's evidence that Father was harming her and the children. Mother introduced evidence from the children's therapist with accusations that Father had "heavily coached" the children to "alienate[]" them from Mother and that Father was "fixated about making accusations against" Mother. After reviewing and evaluating the evidence, the trial court made unchallenged Findings the therapist's accusations were "without a valid basis" and based on "assumptions he was not in a position to make." The trial court also made further Findings about the Massachusetts incident, concluding in line with the Massachusetts court that Mother had falsely alleged domestic violence:

127. On or about March, 2019, she went to the Massachusetts court and obtained a DVPO [domestic violence protection order] with custody provisions by making false statements and testimony to the Massachusetts court.
. . .
129. She alleged domestic violence which was not true.
. . .
132. She lied to the Judge in Massachusetts to the point that the matter was not just dismissed but vacated nunc pro tunc.
133. The Judge was clearly disgusted with the whole process as she had questioned . . . [M]other extensively at the ex-parte hearing as she felt she did not have jurisdiction.

134. The Court determined . . . [M]other made false statements. She uprooted the children and took them to a state in which they had never lived.
135. She told the Judge at the Ex-parte hearing that she and the children had lived there since September, 2018. That she had to have surgery so she took the children to . . . [F]ather to stay. She further alleged domestic violence including harm to the children, all of which was untrue.

¶ 11     Beyond the unchallenged Findings about Father, the trial court also made unchallenged Findings about Mother's actions and relationship with the children. First, the trial court noted the negative impact the Massachusetts incident had on the children. The trial court found the incident "was a very traumatic experience for both boys" that "is having a lasting impact upon them emotionally." Mother "disrupted their education in that she took them without warning, did not enroll them in school and cut off their contact with their [F]ather and stepmother as well as their friends. (This lasted for approximately two (2) weeks.)." The trial court found the children viewed the situation as Mother having "essentially kidnapped them." As a result, the children were "angry" with Mother and "no longer want[ed] to have contact with" Mother because of Mother's actions. At the time, Mother had not realized the impact of the Massachusetts incident, and the trial court also found she still did not "demonstrate an appreciation for the trauma she caused."

¶ 12     The trial court also made unchallenged Findings beyond the Massachusetts incident. It found Mother hindered the children's therapy by "dominat[ing] the

sessions" such that they "obtained little if any benefit." Once the children transitioned to individual therapy without Mother, they started "doing much better in therapy." Further, the trial court made an unchallenged Finding that it is "very likely" that Mother "suffers from mental or emotional issues of unknown etiology."

¶ 13 Finally, the trial court made several unchallenged Findings of Fact about the children's resistance to continued visitation with Mother. Even before the trial court got involved, the children were "resistant to visiting" with Mother, although under a therapist's supervision they initially graduated from supervised visitation to unsupervised visitation. Following the Massachusetts incident, the children told the court at the in-chambers meeting they "did not want to visit with" Mother. Following that time, "[t]he children have become increasingly resistant to visiting with" Mother. Ultimately, by the time the order was entered, the trial court found the children "do not want to visit with or even talk to" Mother. The children even "declined to have dinner or otherwise visit with" Mother during the trial. The trial court further found Mother had "disrupt[ed] the peace and tranquility of the minor children's lives in her effort to force visitation on them." The stress of visitation was so great that it caused one of the children to suffer a reoccurrence of a stress-related ailment that has improved since visitation stopped, which decreased the children's stress levels.

¶ 14 Based upon all these Findings, the trial court granted Father sole legal and physical custody of the children and denied Mother visitation, finding it was not in

the best interest and welfare of the children.  This Court allowed Mother's petition

for writ of certiorari "for purposes of reviewing the 'Order on Motions to Modify

Custody/ Contempt'" and the amended order.

## II.    Subject Matter Jurisdiction

¶ 15        Mother first argues the trial court lacked subject matter jurisdiction.  The

argument takes two forms.  First, Mother lists a number of "[e]xception[s]," all of

which relate to the trial court's denial of Mother's motion to dismiss based on lack of

subject matter jurisdiction or the trial court's Findings of Fact and Conclusions of

Law on subject matter jurisdiction.  We note that exceptions were eliminated in

changes to the Rules of Appellate Procedure effective as of October 2009.  *See* 363

N.C. at 901, 935–38 (enacting new Rules of Appellate Procedure and listing new Rule

10 as well as history of changes, including "delet[ion of] former 10(a)"); 324 N.C. at

638 (laying out old Rule of Appellate Procedure 10(a), requiring assignments of error);

287 N.C. at 698–99 (recounting Rule of Appellate Procedure 10(a) as originally

enacted, which includes the term "exceptions" in the places where Rule 10(a) before

2009 used the term "assignments of error" and requires "exceptions" to be the basis

of assignments of error).[4]  Although this method is not in compliance with the Rules

---

[4] This citation sentence cites to appendices in the hardcopy versions of the North Carolina Reporter.  A citation to the hardcopy is required because the online versions of the North Carolina Reporter on Westlaw and Lexis do not include the appendices nor historical versions of the North Carolina Rules of Appellate Procedure.

of Appellate Procedure, we will treat Mother's "exceptions" as challenges to the noted Findings of Fact and Conclusions of Law.

¶ 16    Mother's other arguments on subject matter jurisdiction are more specific. First, Mother argues the trial court should have declined to exercise jurisdiction pursuant to North Carolina General Statute § 50A-208(a) because "any subject matter jurisdiction" the trial court "might have obtained was the result of fraud." (Capitalization altered.)  Specifically, Mother argues she had evidence that Father "falsely represented to her and the New York court that he planned to live in North Carolina at least until the children graduated from high school."  As part of this argument under § 50A-208(a), Mother would have to demonstrate that the New York court, as a "court of the state otherwise having jurisdiction," did not determine "that this State [North Carolina] is a more appropriate forum."  N.C. Gen. Stat. § 50A-208(a)(2) (citations omitted).  Mother's response to this exception to § 50A-208(a)'s requirement for a trial court to decline jurisdiction in certain situations is that, "it would be up to the New York court to make the determination that North Carolina would be the more appropriate forum."  The crux of these arguments is again that "the trial court erred in finding and concluding that North Carolina had subject matter jurisdiction and had jurisdiction to modify the New York custody order" and denying Mother's motion to dismiss on those grounds.  (Capitalization altered.)

**A. Standard of Review**

Oddly, Mother filed the "Petition for Registration of Foreign Child Custody Order" and the "Motion for Modification of Parenting Time Schedule" that led to the order from which Mother appeals. (Capitalization altered.) *See Booker v. Strege*, 256 N.C. App 172, 174, 807 S.E.2d 597, 599 (2017) ("Oddly, it was defendant who filed for modification of custody in North Carolina[.]"). "[N]onetheless, a party cannot confer subject matter jurisdiction on a court merely by requesting relief in it." *Id.* (citing *In re T.R.P.*, 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006) ("Subject matter jurisdiction cannot be conferred upon a court by consent, waiver or estoppel, and therefore failure to object to the jurisdiction is immaterial. Because litigants cannot consent to jurisdiction not authorized by law, they may challenge jurisdiction over the subject matter at any stage of the proceedings, even after judgment." (noting alterations))). "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010); *see also Matter of T.R.*, 250 N.C. App. 386, 389, 792 S.E.2d 197, 200 (2016) ("The issue of whether a trial court possesses jurisdiction under the UCCJEA is a question of law that we review *de novo*.") (citing *In re J.H.*, 244 N.C. App. 255, 260, 780 S.E.2d 228, 233 (2015)).

**B. Analysis**

As explained above, Mother challenges both the general Findings of Fact and

Conclusions of Law determining the trial court had subject matter jurisdiction by listing exceptions and makes a specific challenge to such jurisdiction via North Carolina General Statute § 50A-208(a). We first address the general argument that the trial court lacked subject matter jurisdiction and then turn to the specific argument pursuant to § 50A-208(a).

### 1. *Subject Matter Jurisdiction Generally*

¶ 19    Since the original child custody order in this case is from New York, the applicable provision of the UCCJEA is North Carolina General Statute § 50A-203, which addresses when North Carolina courts can modify a "child-custody determination made by a court of another state." N.C. Gen. Stat. § 50A-203 (2019).

> Under the applicable provisions of N.C. Gen. Stat. § 50A–203, a North Carolina court may modify an out-of-state child custody determination if both (1) North Carolina "has jurisdiction to make an initial determination under G.S. 50A–201(a)(1) or G.S. 50A–201(a)(2)" *and* (2) "[t]he court of the other state determines it no longer has exclusive, continuing jurisdiction under G.S. 50A–202 *or* that a court of this State would be a more convenient forum under G.S. 50A–207[.]" N.C. Gen. Stat. § 50A–203(1) (emphasis added).

*Matter of T.R.*, 250 N.C. App. at 389, 792 S.E.2d at 200 (footnote omitted) (all alterations and emphasis in original).

¶ 20    The first part of § 50A-203's test imports the requirements from § 50A-201(a). The latter section states:

(a) Except as otherwise provided in G.S. 50A-204, a court of this State has jurisdiction to make an initial child-custody determination only if:
> (1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
> (2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:
> a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
> b. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

N.C. Gen. Stat. § 50A-201(a) (2019). The term "home state" is defined as:

> the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

N.C. Gen. Stat. § 50A-102(7) (2019).

¶ 21    Here, North Carolina was the home state for the children when the child custody proceeding commenced. The uncontested Findings of Fact found: "The

children and . . . [F]ather resided in North Carolina for more than six consecutive months immediately preceding the filing of the matter. (March, 2017 until the registration in December, 2017 and the filings beginning in January, 2018)." This Finding of Fact was based on Mother's own original Motion for Modification of Parenting Time Schedule that indicated both children lived with Father in North Carolina for the past six months. Thus our *de novo* review does not find anything different from the trial court. Because a parent, Father, and the children lived in North Carolina for at least six months before proceedings began, North Carolina is the home state. N.C. Gen. Stat. § 50A-102(7). Because North Carolina is the home state, its courts, including the trial court, had jurisdiction under § 50A-201(a)(1).

¶ 22       Turning to the second requirement to modify an out-of-state child custody order, § 50A-203 requires "[t]he court of the other state [to] determine[] it no longer has exclusive, continuing jurisdiction under G.S. 50A–202 or that a court of this State would be a more convenient forum under G.S. 50A–207[.]" *Matter of T.R.*, 250 N.C. App. at 389, 792 S.E.2d at 200 (citing N.C. Gen. Stat. § 50A-203(1)) (first and last alterations in original). Here, as the trial court found, the New York child custody order specifically stated it was "relinquishing [j]urisdiction," once as a freestanding statement and once when it ordered the parents to register the order in North Carolina within seven days. Thus, the second jurisdictional requirement to modify an out-of-state child custody order is also met. Because both requirements of § 50A-

203 are met, we conclude after *de novo* review that the trial court had subject matter jurisdiction.

### 2. *Jurisdiction and § 50A-208(a)*

¶ 23    Turning to Mother's second argument, we must address whether the trial court should have declined to exercise jurisdiction under North Carolina General Statute § 50A-208(a). That section provides: "Except as otherwise provided in G.S. 50A-204 or by other law of this State, if a court of this State has jurisdiction under this Article because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless" one of its exceptions applies. N.C. Gen. Stat. § 50A-208(a). The exceptions[5] that allow the court to still exercise jurisdiction are:

> (1) The parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
> (2) A court of the state otherwise having jurisdiction under G.S. 50A-201 through G.S. 50A-203 determines that this State is a more appropriate forum under G.S. 50A-207; or
> (3) No court of any other state would have jurisdiction under the criteria specified in G.S. 50A-201 through G.S. 50A-203.

N.C. Gen. Stat. § 50A-208(a)(1)–(3).

¶ 24    Here, the trial court's undisputed Findings of Fact show that the lower court

---

[5] This specifically refers to the exceptions in § 50A-208(a)(1)–(3) because the opening clause's references to § 50A-204 or other law in North Carolina do not apply.

fully considered Mother's allegations of Father's fraud and simply did not find them credible. The trial court heard from Mother and reviewed both the New York order and court file. The trial court found the necessary facts to support subject matter jurisdiction. A review of the transcript from the trial court hearing further supports that the trial court fully considered the alleged fraud issue; it asked questions of Mother and took time to review the papers throughout. At one point, the trial court even said, "I'm just going to let her [Mother] argue at this point," after Father's attorney made repeated motions to strike Mother's arguments and the trial court had previously sustained Father's objections.

We further note that the "fraud" alleged by Mother was Father's representation that he "planned to live in North Carolina at least until the children graduated from high school" but he later moved to South Carolina. There is no question that he and the children did live in North Carolina for one year and three months (March 2017 to June 2018) and he later moved to South Carolina. Normally, fraud is a misrepresentation of a past or existing fact. *See Odom v. Little Rock & I-85 Corp.*, 299 N.C. 86, 91, 261 S.E.2d 99, 103 (1980) (requiring for a prima facie case of fraud that a plaintiff show "(a) that the defendant made a representation relating to some material *past or existing fact* . . . ." (Emphasis added.)), *overruled on other grounds Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988). Mother does not allege that Father misrepresented his actual residence

in North Carolina. Home state jurisdiction under the UCCJEA is based upon the actual residence of the parent and children for a period of at least six months, N.C. Gen. Stat. § 50A-102(7), and there is no question that Father and the children did reside in North Carolina for this time, even if they later moved. The UCCJEA does not base jurisdiction on where a parent plans or intends to reside in the future, but on the actual residence. Thus, we do not find support for invoking § 50A-208(a)'s jurisdictional bar based on unjustifiable conduct.

¶ 26        But even if we assume Father made some misrepresentation of his future intent, this case would fall within the exceptions in § 50A-208(a)(1)–(3). First, the parents acquiesced in the exercise of jurisdiction, meeting the requirement of § 50A-208(a)(1). Parents can acquiesce to jurisdiction by registering an out-of-state child custody order here or by filing a child custody action in the state. *Quevedo-Woolf v. Overholser*, 261 N.C. App. 387, 411, 820 S.E.2d 817, 833 (2018). While Father does not challenge jurisdiction, we note he acquiesced in jurisdiction when he filed a motion to modify custody in the case. As with the plaintiff in *Quevedo-Woolf*, Mother here acquiesced to the exercise of jurisdiction both by registering the New York custody order here and by filing her own motion to modify child custody here. *Id.* Mother argues she only arguably acquiesced to jurisdiction in North Carolina "on the basis of [Mother]'s reasonable reliance upon [Father]'s false representations that he intended to remain in North Carolina with the children."

¶ 27        Beyond Mother's acquiescence to jurisdiction, the exception in § 50A-208(a)(2) also applies.    Under that exception, when a state otherwise having jurisdiction determines that North Carolina is the more appropriate forum, North Carolina courts will have jurisdiction even when there has been unjustifiable conduct.   N.C. Gen. Stat. § 50A-208(a)(2).   Here, New York determined North Carolina was the more appropriate forum at the end of the child custody order Mother sought to register and then modify.   The New York order specifically stated New York was relinquishing jurisdiction and ordered the parties to register the order in North Carolina within seven days.   Mother argues in response that "it would be up to the New York court to make the determination that North Carolina would be the more appropriate forum." This argument overlooks that the New York court did just that in its order, as laid out above.   Thus, even if Father engaged in unjustifiable conduct, the North Carolina courts would still have jurisdiction under the exception in § 50A-208(a)(2).

¶ 28        While Mother alleges Father committed fraud, the trial court made undisputed Findings of Fact that she had engaged in fraud in Massachusetts.   The trial court recounted how Mother "gave false statements to the Court in Massachusetts in order to obtain a DVPO [domestic violence protection order] against . . . [F]ather with custody provisions," how Mother falsely told the Massachusetts court that the children lived in Massachusetts, and how Mother "alleged domestic violence including harm to the children, all of which was untrue."   Mother's misconduct in

Massachusetts was so bad "that the matter was not just dismissed but vacated nunc pro tunc," a mechanism which exists, *inter alia*, "to *prevent a failure of justice* resulting, directly or indirectly from delay in court proceedings subsequent to a time when a judgment, order or decree ought to and would have been entered, save that the cause was pending under advisement." *Perkins v. Perkins*, 114 N.E. 713, 714 (Mass. 1917) (emphasis added).

¶ 29    Beyond Mother's fraud in the Massachusetts action, Mother's allegations regarding jurisdiction have also been inconsistent. Mother has alleged at various times throughout this litigation that her residence was North Carolina, Massachusetts, or New York. Mother's residence status was so confusing that rather than definitively stating where she resided in the order being appealed, the trial court could only state Mother "is *currently believed* to be residing in the state of Massachusetts." (Emphasis added.) Thus, while Mother alleges Father committed fraud to manipulate jurisdiction, the trial court found she had engaged in that behavior herself as well as other inconsistencies as to her residence.

¶ 30    After *de novo* review, we reject Mother's § 50A-208(a) argument as well and determine the trial court correctly determined North Carolina courts had subject matter jurisdiction under the UCCJEA.

### III.    Challenges to Specific Findings of Fact and Conclusions of Law

¶ 31    Following her jurisdictional argument, Mother challenges numerous Findings

of Fact and Conclusions of Law. As with the jurisdictional challenge, Mother's argument includes a list of exceptions, and we again treat them as challenges to the specified Findings of Fact or Conclusions of Law. This time, the exceptions align with Mother's arguments more precisely.

¶ 32     Mother's challenges can be broken down into specific subjects. First, Mother argues the trial court erred in finding and concluding she "acted inconsistently with her constitutionally protected status as a parent." (Capitalization altered.) Further, Mother alleges the trial court erred in finding and concluding that "[Father] is a fit and proper person to have sole legal and physical custody" and in granting him such custody. (Capitalization altered.) These challenges are only made in the exceptions and the remainder of the brief does not expand upon them.

¶ 33     In contrast, Mother's final argument includes both exceptions and further discussion in her brief. Mother argues the trial court erred by finding and concluding, "it is not in the best interest of the minor children to force visitation on them." (Capitalization altered.) In a similar vein, Mother contends the trial court erred in "not allowing [Mother] any visitation with the minor children in that the circumstances of the case do not give rise to complete denial of access to the minor children." (Capitalization altered.) Specifically, Mother argues the trial court erred by denying all visitation because there were no findings "of physical or sexual abuse or severe neglect of the children." Mother further contends we should consider that

the trial court's May 2019 order came after Mother took the children from South

Carolina to Massachusetts and even then the trial court allowed Mother to have "full

weekend visitation (to be exercised in South Carolina) and summer visitation (which

could be exercised in Massachusetts)." After addressing the standard of review, we

address each subject in turn.

**A. Standard of Review**

¶ 34    "When reviewing a trial court's decision to grant or deny a motion for the

modification of an existing child custody order, the appellate courts must examine

the trial court's findings of fact to determine whether they are supported by

substantial evidence." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253

(2003). "Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id.* (quotation and citation omitted).

Trial courts are given "broad discretion" in child custody matters:

> This discretion is based upon the trial courts' opportunity
> to see the parties; to hear the witnesses; and to detect
> tenors, tones, and flavors that are lost in the bare printed
> record read months later by appellate judges. Accordingly,
> should we conclude that there is substantial evidence in
> the record to support the trial court's findings of fact, such
> findings are conclusive on appeal, even if record evidence
> might sustain findings to the contrary.

*Id.*, 357 N.C. at 474–75, 586 S.E.2d at 253–54 (citations and quotations omitted).

Unchallenged findings of fact are "presumed to be supported by competent evidence

and [are] binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

¶ 35    In addition to evaluating whether findings of fact are supported by substantial evidence, the reviewing court "must determine if the trial court's factual findings support its conclusions of law." *Shipman*, 357 N.C. at 475, 586 S.E.2d at 254. We review whether the findings of fact support the conclusions of law *de novo*. *Respess v. Respess*, 232 N.C. App. 611, 614, 754 S.E.2d 691, 695 (2014) (citing *Owenby v. Young*, 357 N.C. 142, 145, 579 S.E.2d 264, 268 (2003)) (other citation omitted). "If the trial court's uncontested findings of fact support its conclusions of law, we must affirm the trial court's order." *Id.*, 232 N.C. App. at 614–15, 754 S.E.2d at 695 (citing *Mussa v. Palmer-Mussa*, 366 N.C. 185, 191, 731 S.E.2d 404, 409 (2012)).

**B. Analysis**

¶ 36    We now address in turn each of the subjects in Mother's challenges to the Findings of Fact and Conclusions of Law, as laid out above. We briefly note a common issue across the areas. Mother challenged only the ultimate Findings of Fact, not Findings as to specific events and actions upon which the ultimate Findings are based. Because unchallenged Findings of Fact are binding, *Koufman*, 330 N.C. at 97, 408 S.E.2d at 731, we merely need to assess whether the unchallenged Findings of Fact that describe Mother's conduct support the ultimate Findings of Fact. In other words, we are assessing the challenged Findings of Fact in essentially the same way

we would review disputed Conclusions of Law. That the challenged Findings of Fact mirror the challenged Conclusions of Law further supports this approach. As this Court has previously stated, findings of fact and conclusions of law that "say the same thing . . . are best characterized as conclusions of law." *Walsh v. Jones*, 263 N.C. App. 582, 589, 824 S.E.2d 129, 134 (2019). Thus, as to each of the challenged categories, we will assess whether the unchallenged Findings of Fact support the challenged Conclusions of Law. If they do, then, by definition, the mirroring ultimate Findings of Fact are supported by substantial evidence. *See Shipman*, 357 N.C. at 474, 586 S.E.2d at 253 ("Substantial evidence is such relevant evidence as a reasonable mind might accept as *adequate to support a conclusion*.") (citation and quotations omitted) (emphasis added).

### 1. *Findings and Conclusions on Mother's Constitutionally Protected Status as a Parent*

Mother's first set of exceptions takes issue with the trial court's Findings of Fact and Conclusions of Law that she acted inconsistently with her constitutionally protected status as a parent. Mother makes no argument beyond listing the exceptions, and it is not clear to us, absent any argument to the contrary, that these Findings and Conclusions are even relevant. As our Supreme Court recently reiterated in *Routten v. Routten*, the constitutionally protected status right of parents "*is irrelevant in a custody proceeding between two natural parents . . . .* In such

instances, the trial court must determine custody using the 'best interest of the child' test." *See* 374 N.C. 571, 577–78, 843 S.E.2d 154, 158–59 (2020) (reiterating support for the quoted language from past cases and "expressly overrul[ing]" cases from this Court that applied the constitutionally protected status right to disputes between two parents) (quoting *Owenby*, 357 N.C. at 145, 579 S.E.2d at 267) (emphasis in original). Since this is a dispute between two natural parents, these Findings and Conclusions are irrelevant to the custody modification order, so we do not address them.

¶ 38     Beyond Mother expressly challenging the constitutionally protected status Finding, one of the relevant exceptions extends the challenge to the trial court's Finding that she was not "a fit and proper person for care, custody, and control of the minor children." Fitness, or lack thereof, is part of the same constitutionally protected status of a parent framework that does not apply to child custody disputes between two parents, except as relevant to the denial of visitation under North Carolina General Statute § 50-13.5(i) as discussed below. *See Owenby*, 357 N.C. at 145, 579 S.E.2d at 266–67 (explaining "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally protected paramount right of parents to custody, care, and control of their children must prevail" before then stating that right is irrelevant in a custody proceeding between natural parents) (quoting *Petersen v. Rogers*, 337 N.C. 397, 403–04, 445 S.E.2d 901, 905 (1994)). While we discuss the Finding that Mother was unfit below in the

statutory context, we note that in the constitutional context, it is irrelevant, so we do not address it further.

### 2. *Findings and Conclusions on Father's Sole Legal and Physical Custody*

¶ 39 Mother's next set of exceptions, which also contain no separate argument, challenge the trial court's Findings of Fact and Conclusions of Law that Father is a fit and proper person to have legal custody and that it is in the best interest of the children that Father have sole custody. Mother likewise listed exceptions to the trial court's order, which was subsequently amended, granting Father "sole legal and physical custody." (Emphasis omitted.) We address the Findings and Conclusions on Father being a fit and proper person to have legal and physical custody and then review the best interest of the child analysis.

¶ 40 As with the Findings and Conclusions on Mother's constitutionally protected status as a parent above, the parts of the custody modification order concerning Father's fitness are irrelevant. As explained above, fitness is part of the same constitutionally protected status of a parent framework that does not apply to child custody disputes between two parents, except as relevant to the statutory denial of visitation scheme. *Owenby*, 357 N.C. at 145, 579 S.E.2d at 266–67. Rather, in child custody disputes between two parents, the trial court determines custody solely using the "best interest of the child" test. *Routten*, 374 N.C. at 578, 843 S.E.2d at 159 (citing

*Adams v. Tessener*, 354 N.C 57, 61, 550 S.E.2d 499, 502 (2001)).

¶ 41 "The welfare or best interest of the child, in light of all the circumstances, is the paramount consideration which guides the court in awarding the custody of the minor child[ren]. It is the polar star by which the discretion of the court is guided." *Phelps v. Phelps*, 337 N.C. 344, 354, 446 S.E.2d 17, 23 (1994) (internal citations and quotations omitted). "Trial courts are permitted to consider an array of factors in order to determine what is in the best interest of the child[ren]." *Id.*, 337 N.C. at 352, 446 S.E.2d at 22. "Since the trial court had the opportunity to see the parties in person and to hear the witnesses and determine credibility," appellate review "is confined to whether the court abused its discretion." *Cox v. Cox*, 133 N.C. App. 221, 228–29, 515 S.E.2d 61, 67 (1999).

¶ 42 Here, the trial court made extensive, unchallenged Findings of Fact to support its ultimate Finding of Fact, similar Conclusion of Law, and order that "[i]t is in the best interest and welfare of the minor children that . . . Father be awarded sole custody of the minor children." First, the trial court made numerous unchallenged Findings of Fact indicating the children have been and are doing well living with Father. The trial court noted the children lived primarily with Father at the start of this case and the children's previous therapist in New York approved that setup. Prior to the incident when Mother took them to Massachusetts, the children were doing well with Father, with the trial court specifically finding they were happy in

Father's home and doing well in school. Further, the trial court found at the time of its ruling: "The minor children are doing well in their [F]ather's care. They are both doing well in school and are happy in the home of their [F]ather and step-mother."

¶ 43 The trial court also made unchallenged Findings about the harm Mother's actions have caused the children. It specifically found the children are "angry" with Mother and "no longer want[] to have contact with her" because of her own actions. The trial court also recounted Mother's actions in taking the children to Massachusetts, which the children viewed as Mother having "essentially kidnapped them." Further, the trial court found the Massachusetts incident "was a very traumatic experience for both boys" that "is having a lasting impact upon them emotionally." Mother also "does not demonstrate an appreciation for the trauma she caused" by that incident nor the negative impacts taking the children to Massachusetts had on them: "She disrupted their education in that she took them without warning, did not enroll them in school and cut off their contact with their [F]ather and stepmother as well as their friends. (This lasted for approximately two (2) weeks.)." Lastly, as to Mother, the trial court made an unchallenged Finding that it is "very likely" that Mother "suffers from mental or emotional issues of unknown etiology."

¶ 44 Finally, in addition to its Findings about the benefits of staying with Father and the harm Mother had caused, the trial court considered Mother's evidence that

Father was harming her and the children. Mother introduced via the children's therapist accusations that Father had "heavily coached" the children in order to "alienate[]" them from Mother as part of his "fixat[ion] about making accusations against" Mother. While the trial court extensively reviewed that evidence, the trial court found the therapist had no "valid basis" to make the statements he did because he made "assumptions he was not in a position to make." The trial court also considered Mother's previous allegations that Father had committed domestic violence against her and the children, but again it rejected those allegations.

¶ 45 Given the unchallenged Findings of Fact, it is clear the trial court had substantial support for its ultimate Findings of Fact, the Conclusions of Law, and its determination that it was in the best interest of the children for Father to have sole legal and physical custody of the children. We conclude the trial court did not abuse its discretion, and Mother's exceptions suggesting otherwise are unfounded.

### 3. *Findings and Conclusions on Visitation with Mother*

¶ 46 Mother's final arguments center on the trial court's Findings, Conclusions, and order that it is not in the best interest of the children for Mother to have visitation. In addition to the exceptions she lists, Mother argues the trial court erred in denying her all visitation because: (1) there were no findings of physical or sexual abuse or severe neglect as she alleges are required and (2) the May 2019 order still granted Mother full weekend and summer visitation, even though it came after many relevant

events. We address the general argument via the exceptions first before turning to Mother's specific arguments about the lack of abuse or neglect and the visitation provisions of the May 2019 order.

¶ 47          Visitation, like custody, employs the best interests of the child test, and that test can lead to denying a parent all visitation:

> Our courts have long recognized that sometimes, a custody order denying a parent all visitation or contact with a child may be in the child's best interest:
>> "Although courts seldom deny visitation rights to a noncustodial parent, a trial court may do so if it is in the best interests of the child:
>>> 'The welfare of a child is always to be treated as the paramount consideration. Courts are generally reluctant to deny all visitation rights to the divorced parent of a child of tender age, but it is generally agreed that visitation rights should not be permitted to jeopardize a child's welfare.'
>> This principle is codified in N.C. Gen. Stat. § 50–13.5(i), which provides that:
>>> 'In any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child.'"

*Huml v. Huml*, 264 N.C. App. 376, 399–400, 826 S.E.2d 532, 548 (2019) (quoting *Respess*, 232 N.C. App. at 615–16, 754 S.E.2d at 696) (alterations from original, citations, and quotations omitted).

¶ 48          Here, the trial court made extensive, detailed Findings as to Mother's actions and the effect those actions had on her children. As part of gathering evidence to make these Findings, the trial court appointed a GAL for the children to provide additional information. The GAL spoke with Mother, Father, and both children and then prepared a report.

¶ 49          Many of these Findings focused on the fallout from the incident when Mother took the children to Massachusetts, which we have already discussed above. The trial court's findings also went beyond that incident. First, the trial court recounted how it allowed Mother to take the children to lunch shortly after the Massachusetts incident only to have the lunch dominated by Mother asking the children about what they had told the court in chambers, in violation of a court order, which "added further toxicity to the relationship" between Mother and the children. The trial court also recounted how when the children were in therapy, Mother "dominated the sessions and they obtained little if any benefit." Finally, the trial court documented how the children did not want to see Mother as the case was being tried, which was in part due to one of the children being forced to spend his sixteenth birthday in court. This culminated in a situation where the children no longer want to see Mother at all because of how she acts during visits. The stress she causes is so extreme that one of her children suffered a reoccurrence of a stress-related physical ailment that subsided once visitation stopped and he was having less stress.

¶ 50        As the children were ages 14 and 16 by the time the trial court's order came out, they were old enough for the trial court to give their wishes to no longer see Mother considerable weight. *See Falls v. Falls*, 52 N.C. App. 203, 209–10, 278 S.E.2d 546, 551 (1981) ("[T]he wishes of a child of sufficient age to exercise discretion in choosing a custodian is entitled to considerable weight when the contest is between the parents, but is not controlling." (quoting *Hinkle v. Hinkle*, 266 N.C. 189, 197, 146 S.E.2d 73, 79 (1966))); *see also Clark v. Clark*, 294 N.C. 554, 555, 576–77, 243 S.E.2d 129, 130, 142 (1978) (reversing and remanding case in part because the children were all older than eleven at the time of remand and thus it was "appropriate and desirable for the judge to ascertain and consider their wishes in respect to their custody"). The trial court took the children's wishes into account when it ordered that no visitation schedule be set.

¶ 51        Mother acknowledges that the children's wishes should be taken into account, relying on *Clark*. However, she argues the children's wishes "should not be the sole determining factor." That is an accurate statement of law. *See Falls*, 52 N.C. App. at 209–10, 278 S.E.2d at 551 (recounting how wishes of children are not controlling). But it is not an accurate statement of the trial court's actions here. As discussed above, the trial court made extensive Findings about the negative impacts Mother had on the children, including the harm visitation was causing them. While those negative impacts may have underlay the children's wishes to no longer have

visitation with Mother, they are also separate facts supporting the trial court's order denying Mother visitation. As such, the trial court did not make its decision solely based on the children's wishes.

¶ 52 Adding extra weight to the Findings, the trial court made them all by "clear, cogent and convincing evidence," higher than the required preponderance standard. (Emphasis omitted); *Walsh*, 263 N.C. at 590 n.3, 824 S.E.2d at 134–35 n.3 (citing *Speagle v. Seitz*, 354 N.C. 525, 533, 557 S.E.2d 83, 88 (2001) ("[T]he applicable standard of proof in child custody cases is by a preponderance, or greater weight, of the evidence." (alteration in original))). Further, all these Findings are unchallenged; Mother only challenges the ultimate Finding, Conclusion of Law, and order denying her visitation. Mother further recognized the weighty evidence in support of the trial court's Findings. Her brief includes many of the same Findings we discussed above in stating "there are evidentiary findings adverse to [Mother]."

¶ 53 Despite the significant unchallenged Findings on which the trial court relied in determining it was in the best interest of the children to not have visitation with Mother, she still argues the evidence was insufficient for two reasons. First, Mother argues the trial court erred in denying all visitation because there was not "any finding of physical or sexual abuse or severe neglect of the children." Contrary to that argument, which Mother makes without citation to authority, the trial court does not have to find a parent has physically or sexually abused the children or "severely

neglected" them before ceasing visitation. Under North Carolina General Statute § 50-13.5(i):

> In any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child.

As we have already discussed, the trial court made extensive Findings of Fact regarding its reasons for the custody order and the denial of visitation, including both a Finding of Mother's unfitness and a Finding that visitation rights are not in the best interest of the children. Section 50-13.5(i) requires specific findings to support the denial of visitation and the best interests of the children but does not require findings of physical or sexual abuse or severe neglect. The trial court correctly applied the best interest of the child standard, and the extensive unchallenged Findings of Fact support its determination. *See Huml*, 264 N.C. App. at 399–400, 826 S.E.2d at 548 (noting courts use the best interest of the child standard on questions about visitation). While Mother cites cases in which all visitation was denied because of sexual or physical abuse, that argument misses the point. While sexual or physical abuse could support the denial of visitation in the appropriate case, such abuse is not necessary to make that decision.

Mother also argues the trial court erred in denying her any visitation because

its May 2019 orders, which came after the Massachusetts incident and court inquiry into it, "nevertheless granted [Mother] full weekend visitation . . . and summer visitation." This argument fails both in theory and on the evidence before us. First, Mother's argument would upend a basic tenet of family law, that courts have the power to make changes to even permanent orders in response to a substantial change in circumstances. *E.g. Blackley v. Blackley*, 285 N.C. 358, 362, 204 S.E.2d 678, 681 (1974); *see also In re Marlowe*, 268 N.C. 197, 199, 150 S.E.2d 204, 206 (1966) ("Changed conditions will *always* justify inquiry by the courts in the interest and welfare of the children, and decrees may be entered as often as the facts justify." (emphasis added)). We therefore reject Mother's argument that a past grant of visitation on a temporary custody order bars the court from denying visitation in the future.

¶ 55        Beyond the legal issues, Mother's argument does not align with the trial court's actions and the evidence it had available to it. While Mother says the May 2019 order granted her visitation, she fails to include the part of the order stating, "***The minor children will not be forced to visit with [Mother] if they choose not [to] do so and they must inform . . . [Mother] of their desire not to visit with [Mother].***" (Bold and italics in original.) Thus, the trial court's May 2019 order envisioned the possibility of Mother having no visitation because the children would not be forced to visit. Further, in changing the order to not set any visitation, the trial court relied

on additional, unchallenged Findings from the period after May 2019, such as the additional information from the GAL, which further detailed the children's feelings, the fact that the children did not want to see Mother during trial, and the decrease in stress and resulting health improvement one of the children had after visitation stopped. Given these additional facts as well as the court's authority to change even permanent orders in certain circumstances, Mother's argument about the May 2019 order's visitation provision does not convince us.

¶ 56 The trial court's unchallenged Findings of Fact provide ample support for its ultimate Finding, Conclusion of Law, and order that it is in the children's best interests for Mother to not have visitation. As a result, the trial court did not abuse its discretion. The trial court in this case went above and beyond the call of duty in documenting each of many in-chambers conferences and in explaining its rulings as to each and every request Mother made. The trial court also accommodated Mother's pro se filings and her failures to appear on several occasions. The trial court took its role of protecting the best interests of the children very seriously, and this is evident in the orders. We find no issue with its analysis.

## IV. Conclusion

¶ 57 After *de novo* review, we find the trial court had subject matter jurisdiction under the UCCJEA and that no unjustifiable conduct under North Carolina General Statute § 50A-208(a) otherwise interferes with the jurisdiction, especially given that

section's exceptions.  We do not address Mother's challenges to the Findings of Fact and Conclusions of Law that she did not act consistently with her constitutionally protected status as a parent and that Father was a fit and proper person to have custody because those are not relevant in a custody dispute between two parents, except as to the visitation issue.  Finally, we find the uncontested Findings support the ultimate Findings, Conclusions, and the order provisions granting Father sole legal and physical custody and denying Mother visitation based on the best interest of the children, so the trial court did not abuse its discretion on those matters. Therefore, we affirm the trial court's order.

AFFIRMED.

Judges HAMPSON and GRIFFIN concur.